# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  09-10086-CIV-MOORE/SIMONTON

ARNAUD GIRARD,

      Plaintiff,

v.

THOMAS ARTHUR BAXTER
and JUDY DIANE BAXTER,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION
## TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

      Presently pending before the Court is Defendants' Motion To Dismiss Plaintiff's Second Amended Complaint (DE # 11).  This motion is referred to the undersigned United States Magistrate Judge (DE # 23).  Plaintiff has responded in opposition (DE ## 12-15, 17).  Defendants have not replied, and the last day to timely file a reply was October 26, 2009.  For the reasons stated below, it is recommended that the motion to dismiss be denied.

      **I.  Background**

      Plaintiff Arnaud Girard, acting *pro se*, is proceeding under a two-count Second Amended Complaint, in which he alleged that after he salvaged the vessel DIAMOND GIRL, owned by Defendants, on June 20, 2009, and requested that Defendants post $68,500 salvage bond before the DIAMOND GIRL be released, Defendants surreptitiously removed the DIAMOND GIRL from Key West, Florida to Cuba.  In Count I, Plaintiff alleges that Defendants' actions violate Article 21 of the International Convention on Salvage of 1989 (hereafter "the Salcon") (DE # 9 at 7-11, ¶¶39-70).  In Count II, Plaintiff alleges that by removing the DIAMOND GIRL from Key West to Cuba after receiving notice and

without posting security for Plaintiff's salvage claim, Defendant Thomas Baxter committed civil theft, in violation of Fla. Stat. § 772.11 (DE # 9 at 11-16, ¶¶70-103). Plaintiff contends that this Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1333 and the Salcon, and states that the salvage of the Diamond Girl took place in this District, in Key West, Florida (DE # 9 at 2, ¶¶1-3).  Plaintiff also alleges that this Court has subject matter jurisdiction over Defendants, residents of Canada, under Fed.R.Civ.P. 4(k)(1), 28 U.S.C. § 1333(1), and the Florida Long Arm Statute, Fla. Stat. §§ 48.193(1)(a) & (b), insofar as Defendants have had 360 Yachting, based in Ft. Myers, Florida, act as agents for them in managing and chartering the DIAMOND GIRL on the coasts of Southwest Florida and the Florida Keys since at least December 2008, and, in the alternative, under the original maritime jurisdiction of the Federal Courts (DE # 9 at 2-5, ¶¶4-31).

The instant motion followed.

## II.  The Positions of the Parties

### A.  Defendants' Motion

Defendants initially move to dismiss the Complaint for lack of personal jurisdiction over Defendants, contending there is no *in personam* jurisdiction over Defendants in Florida (DE # 11 at 3-5).  In support thereof, Defendants state that the Complaint alleges that 1) Defendants are Canadian citizens living in Canada; 2) the DIAMOND GIRL is registered in Canada; 3) Plaintiff concedes that he does not know if Defendants were in Florida in June 2009; 4) an independent third party, not Defendants, managed and crewed the DIAMOND GIRL; and 5) Plaintiff obtained service upon Defendants in Canada, not in Florida (DE # 11 at 2).  Defendants have also submitted affidavits stating that they 1) do not conduct business in Florida; 2) do not have

2

employees in Florida; 3) do not have property or offices in Florida; 4) do not maintain bank accounts, telephones or mailing addresses in Florida; 5) do not advertise in Florida; 6) are not obligated to and do not pay taxes in Florida and 7) have not appointed any agent for service of process in Florida.  Defendants also state in their affidavits that the DIAMOND GIRL is usually operated by a third party, and that it traverses Florida waters from time to time.  Finally, Defendants concede that they occasionally sail the DIAMOND GIRL in the United States, and that they sometime visit Florida (DE # 11 at 3, 10-13).  Defendants ask this Court to conduct an evidentiary hearing on this issue if Plaintiff submits rebutting affidavits (DE # 11 at 5).

Defendants next ask that the Second Amended Complaint be dismissed, pursuant to Fed.R.Civ.P 12(b)(7), for failure to name as an indispensable party Key West Marine Assistance, LLC, the salvage company owned solely by Plaintiff (DE # 11 at 5-6).

Defendants then move to dismiss the Second Amended Complaint, pursuant to Fed.R.Civ.P 12(b)(6), for failure to comply with Local Admiralty Rule E(3) (DE # 11 at 6-7).

Defendants also move, pursuant to Local Admiralty Rule E(5)(a), to strike Plaintiff's demand that Defendants post a cash bond (DE # 11 at 7).

Finally, Defendants move to dismiss Plaintiff's state law civil theft claim, or move for a more definite statement (DE # 11 at 7-8).

B.  **Plaintiff's Response**

Initially, Plaintiff responds that there is personal jurisdiction over Defendants in Florida because of Defendants' intentional tortious conduct in removing the DIAMOND GIRL from the jurisdiction after receiving a written demand from Plaintiff for a salvage bond (DE # 15 at 1-2).  Moreover, Plaintiff contends that there is personal jurisdiction over Defendants because Defendants carried on a business in Florida by chartering the

DIAMOND GIRL through a Florida company.  In support of his position, Plaintiff states that: 1) Defendants engaged in chartering the DIAMOND GIRL in Florida through 360 Yachting, a Florida company based in Ft. Myers, Florida; 2) the DIAMOND GIRL is registered in Florida and has paid state taxes in Florida; 3) the DIAMOND GIRL's ports include Miami and Captiva Island; 4) 360 Yachting's web site states that the DIAMOND GIRL is available for luxury crewed charter or bareboat charter in Southwest Florida and the Florida Keys for 9 months out of the year; and 5) the DIAMOND GIRL is extensively advertised on 360 Yachting's web site (DE # 15 at 6-7).  Plaintiff has submitted a package of documents supporting his position (Ex. D to DE # 16).  Plaintiff asks that either the motion to dismiss for lack of personal jurisdiction be denied or that jurisdictional discovery be permitted (DE # 15 at 10).

Next, Plaintiff states that Key West Marine Assistance LLC is not an indispensable party to this case because it does not have a salvage claim in this case (DE # 17). Plaintiff also contends that Local Rule E(3) only applies to actions *in rem* (DE # 13). Plaintiff further submits that he is making his request for a security bond pursuant to Article 21 of the Salcon, and not pursuant to Local Rule E(5)(a) (DE # 14).  Finally, Plaintiff submits that he served the required civil theft 30-day demand notice on Defendants and on Defendants' counsel (DE # 12 at 1-2).  Plaintiff also states that he has stated a claim for civil theft since, contrary to Defendants' assertion, he is not alleging that Defendants stole their own boat, but that Defendant Thomas Baxter stole Plaintiff's salvage lien interest in the DIAMOND GIRL (DE # 12 at 2-5).

C. Defendants' Reply

Defendants have not filed a reply and the time to do so has run.

### III.  Standard of Review

The standard for determining a motion to dismiss based on a claim of lack of

personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) was recently reiterated by the

Eleventh Circuit Court of Appeals in *Diamond Crystal Brands, Inc. v. Food Movers Int'l,*

*Inc.*, ___ F.3d ___, 2010 WL 100965 at *3 (11th Cir. Jan. 13, 2010):

> "A plaintiff seeking the exercise of personal jurisdiction over
> a nonresident defendant bears the initial burden of alleging
> in the complaint sufficient facts to make out a prima facie
> case of jurisdiction."  *United Techs. Corp. v. Mazer*, 556 F.3d
> 1260, 1274 (11th Cir. 2009).  "Where, as here, the defendant
> challenges jurisdiction by submitting affidavit evidence in
> support of its position, 'the burden traditionally shifts back to
> the plaintiff to produce evidence supporting jurisdiction,'" *Id.*
> (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d
> 1264, 1269 (11th Cir. 2002); *see also Polskie Linie Oceaniczne*
> *v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986)
> (noting that, if the defendant makes a showing of the
> inapplicability of the long-arm statute, "the plaintiff is
> required to substantiate the jurisdictional allegations in the
> complaint by affidavits or other competent proof, and not
> merely reiterate the factual allegations in the complaint").
> "Where the plaintiff's complaint and supporting evidence
> conflict with the defendant's affidavits, the court must
> construe all reasonable inferences in favor of the plaintiff."
> *Meier*, 288 F.3d at 1269.

*Accord United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *Morris*

*v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).  The court has the discretion to hold an

evidentiary hearing if there are factual conflicts, but is not required to do so.  *Delong*

*Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988), citing

*Edwards v. Associated Press*, 512 F.2d 258, 262 n. 8 (5th Cir. 1975).  Thus, under the

above standard, the allegations in the plaintiff's complaint that are uncontroverted by the

defendant's affidavits or deposition testimony are accepted as true, and where the

parties' affidavits or deposition testimony conflict, if no evidentiary hearing is held, the

5

court must construe all reasonable inferences in the plaintiff's favor.

Using the above evidentiary standards, in order to determine the existence of personal jurisdiction, this Court must determine first whether Defendants' alleged activities fall within the reach of the Florida long arm statute, Fla. Stat. § 48.193, and if so, whether the exercise of personal jurisdiction comports with the constitutional requirement of due process of law under the Fourteenth Amendment to the United States Constitution.

Moreover, "[i]f the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction generating event. *See Cronin v. Washington Nat'l Ins. Co.,* 980 F.2d 663, 671 (11th Cir. 1993); *Brennan v. The Roman Catholic Diocese of Syracuse New York, Inc.,* 322 Fed. Appx. 852, 2009 WL 941765 at *1 (11th Cir. 2009).

With respect to the Motion to Dismiss made pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, it is well-settled that in order to state a claim, Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  While a court, at this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007), the Supreme Court explained the pleading requirements which must be met in a Complaint if it is to survive a motion to dismiss.  The Court emphasized that the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal* at 1949. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  In practice, to survive a motion to dismiss,

6

"a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id*.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.  Determining whether a complaint states a plausible claim for relief is a context specific undertaking that requires the court to draw on its judicial experience and common sense.

Next, a Rule 12(b)(7) motion to dismiss for failure to join a required party under Rule 19 triggers a two-step inquiry.  First, the Court applies the standards of Rule 19)a) to determine whether the person in question is one who should be jointed if feasible.  This first step is governed by pragmatic concerns, especially the effect of the parties and the litigation.  Second, if the person should be joined but cannot be, the court weighs a series of factors listed in Rule 19(b) to determine whether dismissal is appropriate. *United States v. Janke*, No. 09-14044-CIV, 2009 WL 2525073 at *1-2 (S.D. Fla. Aug. 17, 2009), citing *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279-80 (11th Cir. 2003).  As with a motion to dismiss for failure to state a claim, all the facts stated in the complaint and all reasonable inferences therefrom are accepted as true. *United States v. Janke*, No. 09-14044-CIV, 2009 WL 2525073 at *2 (S.D. Fla. Aug. 17, 2009), citing *BB In Tech, Co., Ltd. v. JAF, L.L.C.*, 242 F.R.D. 632, 636-37 (S.D. Fla. 2007).

Finally, Federal Courts disfavor motions for a more definite statement, due to the liberal pleading and discovery requirements set forth in the Rules of Civil Procedure.  Pursuant to Rule 12(e), a motion for more definite statement will only be granted if a

Complaint is so vague or ambiguous that a party cannot respond in good faith or without prejudice to himself.  *See BB In Tech, Co., Ltd. v. JAF, L.L.C.*, 242 F.R.D. 632, 640 (S.D. Fla. 2007).

IV.  <u>Legal Analysis</u>

Initially, Defendants have moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2), based upon lack of personal jurisdiction.  Defendants have requested an evidentiary hearing if Plaintiff submits rebutting affidavits (DE # 11 at 5).  Plaintiff has submitted an affidavit and asks either that the motion to dismiss for lack of personal jurisdiction be denied or that jurisdictional discovery be permitted (DE # 15 at 10).

At the outset, the undersigned finds that an evidentiary hearing is not necessary. Plaintiff's affidavit and related documents do not contradict the facts alleged in Defendants' affidavits, but assert additional relevant facts which Defendants did not address in their affidavits, and which Defendants have not rebutted since they did not file a reply.  Therefore, this issue will be determined based upon those factual allegations contained in the Complaint which are uncontradicted, and upon the affidavits filed by the parties.

A.  <u>There Is Personal Jurisdiction Over Defendants Under Florida's Long-Arm Statute</u>

Personal jurisdiction over nonresident defendants, such as Defendants here, begins with the forum state's long-arm statute, which is construed in accordance with state law.  *See Abramson v. Walt Disney Co.*, 132 Fed. Appx. 273, 275 (11th Cir. 2005). The relevant portions of the Florida long arm statute for purposes of determining whether there is personal jurisdiction over Defendants are as follows:

48.193 Acts subjecting person to jurisdiction courts of state

> (1) Any person . . . who personally or through an agent does any of the acts enumerated in this subsection thereby submits . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state . . .
>
> (b) Committing a tortious act within this state.

For the reasons set forth below, this Court concludes that the claim for relief set forth in Count 1 of the Second Amended Complaint arises out of "conducting, engaging in, or carrying on a business or business venture in this state," and that the claim for relief set forth in Count 2 arises from "committing a tortious act within this state," and therefore the exercise of personal jurisdiction over Defendants is proper under the Florida long arm statute.

1. <u>Jurisdictional Facts</u>

To support its Motion to Dismiss, Defendants submitted the Affidavits of Defendant Thomas Baxter and of Defendant Judy Baxter.  In opposition, Plaintiff has submitted his own Affidavit, and has attached documents regarding Defendants' business relationship which reflect the contacts between Plaintiff and Defendants after Plaintiff salvaged the DIAMOND GIRL, and which reflect Defendants' relationship with 360 Yachts, a Fort Myers, Florida company which held the DIAMOND GIRL out for charter.  The facts contained within these opposing affidavits do not contradict each other, although the inferences and conclusions to be drawn from those facts are the subject of disagreement.

Defendant Thomas Baxter's affidavit states that he does not: 1) conduct business in the State of Florida; 2) have employees in the State of Florida; 3) have property or

9

offices located in the State of Florida; 4) maintain bank accounts, telephones or mailing addresses in the State of Florida; 5) advertise in the State of Florida; and 6) have an obligation to pay taxes and does not pay taxes in the State of Florida.  Thomas Baxter also avers that he has only been in Florida on three occasions, once in the 1990's to purchase construction equipment, the second time to meet a boat in port and immediately sail it to the Bahamas, and the third time was to pick up a boat in Fort Myers and sail it to Mexico.  The last time he was in Florida was February 2009.  The DIAMOND GIRL is based in the Bahamas during the summer and in Mexico during the winter, and has never been based out of Florida.  The DIAMOND GIRL is owned and titled in Defendants' individual names.  He was not on the DIAMOND GIRL at the time of the alleged incident in Key West, Florida, and the DIAMOND GIRL was in the control of a professional charter company and its captain, who were in Key West for a couple of days, and were not heading anywhere in particular (DE # 11 at 10-11).

Defendant Judy Baxter's affidavit states that she does not: 1) conduct business in the State of Florida; 2) have employees in the State of Florida; 3) have property or offices located in the State of Florida; 4) maintain bank accounts, telephones or mailing addresses in the State of Florida; 5) advertise in the State of Florida; and 6) have an obligation to pay taxes and does not pay taxes in the State of Florida.  She has been in Florida only once, in May, 2008.  The DIAMOND GIRL is based in the Bahamas during the summer and in Mexico during the winter, and has never been based out of Florida.  The DIAMOND GIRL is owned and titled in Defendants' individual names.  He was not on the DIAMOND GIRL at the time of the alleged incident in Key West, Florida, and the DIAMOND GIRL was in the control of a professional charter company and its captain, who were in Key West for a couple of days, and were not heading anywhere in particular

10

(DE # 11 at 12-13).

Plaintiff's affidavit states that immediately after the salvage of the DIAMOND GIRL on Friday, June 19, 2009, he met with the boat's captain, Oliver Spicer, whom he already knew.  Captain Spicer: 1) told Plaintiff that the boat was on a charter from Fort Myers to Key West, and was scheduled to return with her passengers to Fort Myers at the end of the week; 2) gave Plaintiff the telephone number of Defendant Thomas Baxter, the boat's owner; and 3) gave Plaintiff the telephone number of Jay Philips, in Fort Myers, who was the owner of 360 Yachting, the company managing the boat.  Plaintiff told Captain Spicer that the vessel could move around within the harbor, but was not to leave the harbor until Plaintiff had a letter of undertaking from the insurer.  Captain Spicer then called 360 Yachting (Ex. B to DE # 15, at 1-2, ¶¶1-7).

Plaintiff met with Captain Spicer again at approximately 10:45 a.m., during which Captain Spicer told Plaintiff that the owner did not want to make an insurance claim and that Plaintiff should request payment from the 10 or so passengers on the boat.  Plaintiff then threatened to have the U.S. Marshal seize the boat.  Plaintiff and Captain Spicer then agreed that Captain Spicer would work on getting security from the owner and that the boat would not leave Key West until Plaintiff got security (Ex. B to DE # 15, at 2, ¶¶8-11).

Plaintiff and Captain Spicer met again that afternoon, and Captain Spicer gave Plaintiff the telephone number of an attorney for the owner.  Plaintiff called the attorney, Jim Perry, and requested a Letter of Undertaking before letting the boat go.  Plaintiff agreed to call the attorney back with a Salvage Report.  Plaintiff then prepared a Salvage Report and faxed and emailed it to the attorney and to 360 Yachting on the following morning, June 20, 2009.  Plaintiff also sent the Salvage Report and demand for security

11

to Defendant Thomas Baxter by Federal Express on the same day, which Defendant Judy Baxter signed for on June 22, 2009 at 9:55 a.m.  In these documents, Plaintiff again insisted that the boat not leave Key West without his consent (Ex. B to DE # 15, at 2-7, ¶¶12-21).

   At approximately noon on June 20, 2009, Plaintiff was informed that the passengers of the DIAMOND GIRL had disembarked with all their luggage and that a new crew had come on the DIAMOND GIRL.  On June 21, 2009, Plaintiff received a telephone call from Defendant Thomas Baxter, in which Thomas Baxter stated that 1) he received the salvage report but did not read it; 2) there was no insurance on the boat; 3) he had had the boat moved to his home in Cuba; 4) there was nothing Plaintiff could do about it; 5) he might pay Plaintiff for his time; and 6) Plaintiff should call Baxter's attorney, Jim Perry (Ex. B to DE # 15, at 7-9, ¶¶22-24).

   On June 23, 2009, Plaintiff emailed pre-suit notice and demand to Jim Perry and to 360 Yachting.  Plaintiff also sent the pre-suit notice and demand to Jim Perry by certified mail, and Perry received it on June 24.  Plaintiff also sent the pre-suit notice and demand to Defendant Thomas Baxter in Canada via United States Postal Service Global Express Guarantee, which arrived on June 25, 2009.  Plaintiff did not receive any response to his demand for production of either security or of the DIAMOND GIRL (Ex. B to DE # 15, at 9, ¶¶25-28).

   2. <u>There Is Personal Jurisdiction Over Defendants Under Fla. Stat. § 48.193(1)(a)</u>

   For the reasons stated below, Fla. Stat. § 48.193(1)(a) confers personal jurisdiction over Defendants in Florida.  In sum, Defendants conducted a business in Florida by allowing the DIAMOND GIRL to be held out for charter by a Florida company, for use in Florida, and this cause of action arises out of that business.

In order to establish specific personal jurisdiction under Section 48.193(1)(a), the focus of analysis is on the activities of Defendants within the state of Florida that are related to the claims presented in the lawsuit.  *Future Tech Int'l, Inc. v. Tae II Media, Ltd.*, 944 F. Supp 1538, 1558 (S.D. Fla. 1996).

The undisputed facts in this case establish that Defendants were engaged in substantial business activities with 360 Yachts, a Florida company located in Fort Myers, at the time the causes of action in this case accrued.  Defendants contracted with 360 Yachts to charter their boat in the Caribbean area, specifically including Florida. Moreover, the salvage of the DIAMOND GIRL, which is the gravamen of the claims here, occurred in Key West, Florida, while the DIAMOND GIRL was under a charter arranged through 360 Yachts.

For example, in *Future Tech*, extensive correspondence with the plaintiff in Miami and meetings in Miami in connection with the business relationship at issue in the lawsuit were sufficient to support jurisdiction.  In reaching this result in *Future Tech*, the Court cited *Citicorp Ins. Brokers v. J. R. Charman*, 635 So. 2d 79 (1st Dist. Ct. App. 1994), in which the Court sustained jurisdiction on the basis of defendant's actions in sending representatives to Florida on two occasions to solicit business, and sending numerous written communications into Florida in connection with the business at hand.  *See also Dublin Co. v. Peninsular Supply Co.*, 309 So. 2d 207, 210 (Fla. 4th Dist. Ct. App. 1975). The *Future Tech* Court contrasted the substantial nature of the business activity in *Citicorp* and *Dublin* with the isolated activity in *Pacific Coral Shrimp v. Bryant Fisheries*, 844 F. Supp. 1546 (S.D. Fla. 1994), where the transaction at issue in the lawsuit was the result of a "one time deal," as opposed to part of a long term contract.

As recognized by the Court in *Sanchez v. AT&T Corp.*, 1999 WL 1427692 at *6

13

(S.D. Fla. 1999), "the term 'arising from' is broad; it does not mean 'proximately caused by,' but only requires a 'direct affiliation,' nexus,' or 'substantial connection' to exist between the basis for the cause of action and the business activity." *quoting Citicorp Ins. Brokers Ltd. v. Charman*, 635 So. 2d 79, 82 (Fla. 1st Dist. Ct. App. 1994), *citing Damoth v. Reinitz*, 485 So. 2d 881, 883 (Fla. 2d Dist. Ct. App. 1986).

The nature and extent of the relationship between Defendants and 360 Yachts, including the salvage of the DIAMOND GIRL in Florida waters during a charter made through 360 Yachts, is sufficient to confer jurisdiction over Defendants under Section 48.193(1)(a), with respect to Count 1 of the Second Amended Complaint.  *See Future Tech Int'l v. Tae II Media*, 944 F. Supp. 1538 (S.D. Fla. 1996).

Defendants misplace their reliance on the following five cases which they cite in support of their theory that there is no Florida jurisdiction over them (DE # 11 at 4). Initially, none of these cases interpret the Florida long-arm statute, and all are factually distinguishable from the instant case.  In *Saudi v. Acomarit Maritimes Services, S.A.*, 114 Fed.Appx. 449 (3d Cir. 2004), the appellate court affirmed the trial court's finding that there was no specific jurisdiction in Pennsylvania concerning an accident which had occurred in the Gulf of Mexico where the defendant's contacts with Pennsylvania were sporadic, and not continuous and systematic, and the plaintiff's alleged injury did not arise from any activities which the defendant purposely directed at Pennsylvania. *Id.* at 451-53.  The appellate court also affirmed the trial court's finding that there was no basis to establish general jurisdiction over the defendant in Pennsylvania.  The facts that 1) an employee of the defendant sent some reports from his home in Pennsylvania, and made some telephone calls and some emails to and from Pennsylvania; and 2) one of the defendant's vessels made a port call in Pennsylvania after the incident at issue,

14

combined with no evidence that the defendant conducted or solicited any business in Pennsylvania, did not establish continuous and systematic contacts with Pennsylvania. *Id.* at 453-54.

Similarly, in *Binder v. McVey*, 2007 WL 3391419, Civil No. 2005-137 (D.V.I. Nov. 8, 2007), the district court found no personal jurisdiction over the defendants, residents of Arizona, who, while sailing their boat around the world, anchored in the American Virgin Islands for four days, and then anchored in the British Virgin Islands.  While anchored in the British Virgin Islands, the defendants gave a ride in their dinghy to the plaintiff back to the plaintiff's boat, which was also anchored in the British Virgin Islands.  During the dinghy ride, the plaintiff was injured when the dinghy was struck by a motorboat.  The district court found that the plaintiff had not met her burden to show that the court had personal jurisdiction over the defendants simply because they had anchored their boat in the American Virgin Islands for four days.

Next, in *Parsons v. Alpine Ocean Seismic Survey, Inc.*, 1999 WL 13935, No. CIV. A 98-1993, CIV. A. 98-1995 (E.D. La. Jan. 11, 1999), the district court found that there was no basis to establish general jurisdiction over the defendant in Louisiana where the defendant was not a Louisiana corporation, was not registered to do business in Louisiana, had no registered agent in Louisiana, had no assets in Louisiana, had no business office in Louisiana, the vessel upon which the incident occurred had never called in Louisiana or been within Louisiana territorial waters, and the incident occurred in South Carolina.  The only connections which the defendant had with Louisiana were that a vessel chartered by the defendant had one made a call in Louisiana, and the defendant had hired six employees in five years from a company that had an office in New Orleans, and these contacts could not be characterized as continuous and

15

systematic.  *Id*. at *2-3.  The court also held that there was no specific jurisdiction in Louisiana concerning the accident which had occurred in South Carolina simply because the defendant had provided the plaintiffs with airplane tickets to fly from New Orleans to meet the vessel and because defendant had used a Louisiana business to recruit one of the plaintiffs, finding that the defendant's contacts with Louisiana were insufficient to establish that the defendant purposefully availed itself of the privilege of conducting activities in Louisiana.  *Id*. at 3-4.

In *Cevhertas Deniz Nakliyati Anonim Sikreti v. Niederelbe Schiffartgessell GMBH Buxtenude*, 1991 WL 123951, No. 90 Civ. 6829 (KC) (S.D.N.Y. Jun. 22, 1991), the district court found that there was no basis to establish jurisdiction over the defendant in New York where the defendant was not a New York corporation, was not registered to do business in New York, had no agents in New York, had no assets in New York, had no business office in New York, did not solicit business in New York, the vessel upon which the incident occurred had not called in New York on the voyage during which the collision occurred, and the collision occurred in Sri Lanka.  *Id*. at *2-6.  The court characterized the  only connections which the defendant had with New York, occasional calls to New York by vessels the defendant managed and/or chartered to third parties, noting that the defendant did not exercise control over where the ships traveled or what cargo they transported, as isolated contacts, unrelated to the cause of action.  The court found that asserting jurisdiction over the defendant for these reasons would offend against due process.  *Id*. at *6-8.

Finally, in *Atalanta Corp. v. Polskie Linie Oceaniczne*, 683 F.Supp. 347 (S.D.N.Y. 1988), the district court found that there was no basis to establish jurisdiction over one of the defendants in New York where the only connection which the defendant had with

the United States, was that it once chartered one of its vessels to a third party who called at Miami.  The court found that asserting jurisdiction over the defendant for this isolated incident, unrelated to the cause of action, would offend against due process.  *Id*. at 349.

In this case, the facts are very different from the facts in the cases relied upon by Defendants.  Here, the incident at issue, the salvage, occurred in Florida, Defendants provided the DIAMOND GIRL to 360 Yachts, a Florida company, for chartering, 360 Yachts advertised that the DIAMOND GIRL was available for chartering in Florida waters, and, indeed, the DIAMOND GIRL was chartered for a trip from Fort Myers, Florida to Key West, Florida and back to Fort Myers, Florida when the incident at issue occurred. Therefore, it is clear that there is personal jurisdiction over Defendants in Florida because Defendants were conducting business in Florida.

3.   Here Is Personal Jurisdiction Over Defendants Under Fla. Stat. § 48.193(1)(b)

In addition, the undersigned finds that Fla. Stat. § 48.193(1)(b) confers personal jurisdiction over Defendant Thomas Baxter in Florida because the Second Amended Complaint alleges that Defendant Thomas Baxter committed a tortious act within the State of Florida.

Count II of the Second Amended Complaint alleges that after Defendant Thomas Baxter received the salvage report and request for security from Plaintiff, he had his agents remove the DIAMOND GIRL from Key West to Cuba, without posting security, thereby committing the intentional tort of civil theft.  The undersigned notes that Defendants' motion does not specifically move to dismiss Count II for lack of personal jurisdiction.  Moreover, Defendants have not controverted either the relevant allegations in the Second Amended Complaint or the related evidence contained in Plaintiff's

17

Affidavit.  Therefore, the undersigned finds that, pursuant to Fla. Stat. § 48.193(1)(b), this

Court has personal jurisdiction over Defendant Thomas Baxter as to Count II.

    D. <u>Due Process Analysis</u>

    Having determined that the exercise of personal jurisdiction is permitted by the

Florida long arm statute, the undersigned must determine whether this Court's  exercise

of personal jurisdiction would comport with due process of law.  As stated by the

Eleventh Circuit in *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990) (citations partially

omitted):

> Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) This fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at the forum, *Keeton [v. Hustler Magazine, Inc.]*, 465 U.S. 770 at 774, and the litigation results from alleged injuries that "arise out of or relate to" those activities.

> Additionally, the defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there. . . . This requirement assures that a defendant will not be haled into a jurisdiction as a result of random, fortuitous or attenuated contacts, or because of the unilateral activity of a third person. Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state. . . .

> Once it has been determined that the nonresident defendant has purposefully established minimum contacts with the forum such that he should reasonably anticipated being haled into court there, these contacts are considered in light of other factors to decide whether the assertion of personal jurisdiction would comport with "fair play and substantial justice."  These other factors are the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of

> controversies and the shared interest of the states in furthering fundamental substantive social policies. Minimum requirements of "fair play and substantial justice" may defeat the reasonableness of asserting personal jurisdiction even if the defendant has purposefully engaged in forum activities. Conversely, these considerations may serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.

*Accord Oldfield v. Pueblo de Bahia Lora*, 558 F.3d 1210, 1220-22 (11th Cir. 2009).

In the case at bar, as previously stated, the Second Amended Complaint alleges that Defendants conducted business in Florida by holding their boat out for charter in Florida and by registering it in Florida. This case also stems from the salvage of the boat in Key West, Florida. Defendants chose to make money by allowing a Florida company to charter out their boat, the DIAMOND GIRL, in Florida waters, among others. The incident at issue in this case occurred in Key West, during a charter from Fort Myers to Key West and back to Fort Myers. Due process is not violated by having Defendants haled into a Florida court for a lawsuit stemming from their use of a Florida company to charter their boat for trips within Florida waters.

Moreover, Count II of the Second Amended Complaint alleges that, after Plaintiff had notified Defendants' agents that Plaintiff was retaining the DIAMOND GIRL, pursuant to a salvor's lien until satisfactory security for the payment of a salvage award had been negotiated and provided, Defendant Thomas Baxter committed the intentional tort of civil theft in Florida by, without Plaintiff's consent and without providing security, having his agents move the DIAMOND GIRL from Key West to Cuba.

Where, as here, a complaint alleges an intentional tort, due process requires a showing that 1) the defendant committed an intentional tort 2) that was directly aimed at the forum 3) causing an injury in the forum which the defendant should have reasonably

19

anticipated. *See Oldfield v. Pueblo de Bahia Lora*, 558 F.3d 1210, 1220, n. 28 (11th Cir. 2009), quoting *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).  Here, Plaintiff has alleged that Defendant Thomas Baxter committed the intentional tort of civil theft in Key West, by removing the DIAMOND GIRL to Cuba, without posting security, which has injured Plaintiff, a Florida resident.

From the above facts, alleged in the Second Amended Complaint, it is clear that Defendants could be expected to be brought into a Florida court to litigate the claims found in the Second Amended Complaint.  Therefore, the maintenance of the lawsuit in Florida does not offend notions of "fair play and substantial justice", and the exercise of personal jurisdiction in Florida over Defendants meets the requirements of the Florida long arm statute and the requirements of the United States Constitution.

**B.  The Second Amended Complaint Should Not Be Dismissed For Failure To Name Key West Marine Assistance, LLC, As An Indispensable Party**

The Second Amended Complaint should not be dismissed, pursuant to Fed.R.Civ.P. 12(b)(7), for failure to name Key West Marine Assistance, LLC, as an indispensable party.

Rule 19(a)1)(A) states that a non-party is a person who must be joined if, in the non-party's absence, the court cannot accord relief among the existing parties.

Defendants note that Plaintiff is the sole member and owner of Key West Marine Assistance, LLC, and assert that Key West Marine Assistance, LLC, conducts marine salvage operations using the same equipment that Plaintiff uses.  Defendants contend state that if Key West Marine Assistance, LLC, is not named as a plaintiff in this case, they fear multiple salvage claims (DE # 11 at 5-6).

In response, Plaintiff states that he alone, and not Key West Marine Assistance,

20

LLC, has a salvage claim in this case (DE # 17 at 1-2).  Moreover, Plaintiff states that he alone owns Key West Marine Assistance, LLC, and Plaintiff has filed a notarized assignment of Liens and Claims which assigns to Plaintiff any lien or claim which may exist in favor of Key West Marine Assistance, LLC (Ex. A to DE # 17).

This action by Plaintiff conclusively establishes that Defendants do not face a second salvage claim from Key West Marine Assistance, LLC.  Defendants, by not filing a reply, have not controverted Plaintiff's position.  Thus, since it is clear that the Court can accord complete relief in the absence of Key West Marine Assistance, LLC, Defendants' motion to dismiss the Complaint for failure to name an indispensable party should be denied.

### C.  The Second Amended Complaint Should Not Be Dismissed For Failure To Comply With Local Admiralty Rule E(3)

Contrary to Defendants' argument (DE # 11 at 6-7), the Second Amended Complaint should not be dismissed, pursuant to Fed.R.Civ.P. 12(b)(6), because Plaintiff has failed to comply with Local Admiralty Rule E(3).  Local Admiralty Rule E is captioned, "ACTIONS IN REM AND QUASI IN REM:  GENERAL PROVISIONS".  Therefore, this rule does not apply to the Second Amended Complaint, which states that it is an *in personam* action against Defendants, which seeks an Order requiring Defendants to post security in accordance with Article 21 of Salcon and also seeks an award for treble damages against Defendant Thomas Baxter (DE # 9 at 1).

In any event, Plaintiff has largely complied with Local Admiralty Rule E(3).  Rule E(3), requires that in an *in rem* salvage case, the complaint shall also state, to the extent known the value of the hull and other property salvaged, the amount claimed, the names of the principal salvors, and that the suit is instituted in their behalf and in behalf of all

other persons associated with them.  Plaintiff shall also attach a list of all known

salvors, and all persons believed entitled to share in the salvage.  The Second Amended

Complaint states that the estimated value of the DIAMOND GIRL is $685,000.00, and that

Plaintiff requested $68,500.00 in security from Defendants (DE # 9 at 10, 14, ¶¶68-69, 85).

Plaintiff's response to the motion to dismiss for failure to name an indispensable party

(DE # ), makes clear that Plaintiff is the only salvor and is the only person believed

entitled to share in the salvage.  Therefore, the Second Amended Complaint should not

be dismissed because Plaintiff has failed to comply with Local Admiralty Rule E(3).

     D.  <u>The Count of the Second Amended Complaint Alleging Civil Theft
Should Not Be Dismissed</u>

     For the reasons set forth in more detail below, Count II of the Second Amended

Complaint, alleging civil theft, should not be dismissed.  Count II properly alleges that

Plaintiff served Defendants with the required presuit demand notice, and Defendants

have not provided any facts controverting that allegation.  Moreover, a failure to comply

with the presuit notice requirement of Fla. Stat. § 772.11, does not result in dismissal

unless notice cannot be given within the limitation period, and Defendants have not

alleged that notice cannot be given within the limitation period.   Moreover, as Count II

does not allege that Defendants stole their own boat, but that Defendant Thomas Baxter

stole Plaintiff's salvage lien in the boat by improperly moving the boat from Key West to

Cuba, Count II adequately states a claim and should not be dismissed.  Finally,

Defendant Thomas Baxter has failed to establish a basis for requiring a more definite

statement of this claim.

     1.  <u>The Civil Theft Count Should Not Be Dismissed For Failure To Comply
with the Pre-Suit Notice Requirement of Florida's Civil Theft Statute</u>

     Count II of the Second Amended Complaint should not be dismissed for failure to

comply with the presuit notice of the Florida civil theft statute, Fla. Stat. § 772.11, which states, in pertinent part, "before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section."

Initially, Count II properly alleges that Plaintiff has served Defendants with the required presuit notice (DE # 9 at 5, 15-16, ¶¶28, 98-100).  While Defendant Thomas Baxter contends in his motion that he has not received the presuit notice (DE # 11 at 7), his affidavit does not contend that he has not received the presuit notice.  *Cf. Seymour v. Adams*, 638 So.2d 1044, 1049 (Fla. 5th Dist. Ct. App. 1994) (for the plaintiffs to be entitled to summary judgment on the ground that the defendant did not comply with the demand requirement of the civil theft statue, the plaintiffs had to 1) conclusively establish for the record by affidavit that no such demand was made, and 2) also show that the five-year statute of limitations had expired).  In any event, Plaintiff states in his response that he did serve the presuit notice on Defendants (DE # 12 at 2).

Even if Plaintiff had not served the presuit notice on Defendants, this would not suffice to dismiss the Complaint.  A failure to comply with the presuit notice requirement of Fla. Stat. § 772.11, does not result in dismissal unless notice cannot be given within the limitation period.  *See Seymour v. Adams*, 638 So.2d at 1049, & n. 9.  Defendants do not contend that notice in this case cannot be given within the limitation period.

   2.  <u>Count II of The Second Amended Complaint Should Not Be Dismissed For Failure To State A Claim</u>

Count II also should not be dismissed for failure to state a claim.  In his Motion, Defendant Thomas Baxter claims that this Count fails to state a claim for relief because it alleges that Defendant stole his own boat.  However, an examination of the Complaint

reveals that Plaintiff does not allege that Thomas Baxter stole his own boat, but alleges that Thomas Baxter stole Plaintiff's salvage lien in the boat by improperly moving the boat from Key West to Cuba.  Florida case law supports Plaintiff's theory that he has a claim that his salvor's lien in Defendants' vessel gave him a superior interest in the vessel to Defendants' interest in the vessel.  *See Miller v. Wallace Int'l Trucks, Inc.*, 532 So.2d 1276 (Fla. 2nd Dist. Ct. App. 1988).  In *Miller*, the defendant owed a debt to the plaintiff for repairing defendant's truck.  As security for the debt, the defendant gave the plaintiff the title to another vehicle, together with a power of attorney.  Subsequently, the defendant falsely certified to the State of Florida that he had lost the title to the pledged vehicle, obtained a duplicate title for, and then sold the pledged vehicle.  *Id.* at 1276-77. The appellate court found that the defendant had stolen the plaintiff's lien in the pledged vehicle, and was guilty of civil theft.  *Id.* at 1277.  *Accord Russ v. State of Florida*, 830 So.2d 268, 270 (Fla. 1st Dist. Ct. App. 2002).

   3.  <u>The Motion For A More Definite Statement Should Be Denied</u>

   Finally, although the motion to dismiss makes a passing reference to an alternative claim for a more definite statement, no argument regarding this alternative claim for relief is included within the body of the Motion.  Even assuming that this alternative basis for relief has been adequately presented, Defendant Thomas Baxter has made no showing that Count II is so vague or ambiguous that he cannot respond in good faith or without prejudice to himself.  *See BB In Tech, Co., Ltd. v. JAF, L.L.C.*, 242 F.R.D. at 640.

   E.  <u>Defendants' Motion To Strike Plaintiff's Demand That Defendants Post a Cash Bond Should Be Denied</u>

   The motion to strike Plaintiff's demand that Defendants post a cash bond should

be denied.  Defendants state that there is no authority that requires them to post a cash bond (DE # 11 at 7).  However, Plaintiff states that his request is based upon Article 21 of the Salcon, which imposes a requirement that boat owners post adequate security prior to removing their vessel from the port or place where the salvage operation terminated (DE # 14).  Thus, in this case, Defendants would have had to post adequate security before removing their vessel from Key West, and they did not.  As Defendants have not controverted Plaintiff's assertion that Article 21(3) of the Salcon supports his request that Defendants post a cash bond, and have made no other claim regarding the sufficiency of Count I, their motion to strike Plaintiff's request for a cash bond should be denied.

Therefore, based on a review of the record as a whole, it is hereby

**RECOMMENDED** that Defendants' Motion To Dismiss Plaintiff's Second Amended Complaint (DE # 11), be **DENIED**.

The parties will have fourteen days from the date of service of this Order within which to file written objections, if any, for consideration by the United States District Judge to whom this case is assigned.  Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein.  *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in chambers in Miami, Florida on February 1, 2010

_Andrea M. Simonton_
**ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE**

**Copies provided via CM/ECF to:**
**The Honorable K. Michael Moore, United States District Judge**
**All counsel of record**